Argued and submitted September 26, reversed on appeal; affirmed on both cross-
appeals November 9, 1983

In the Matter of the Compensation
of William M. Still, Claimant.

STILL,
*Petitioner - Cross-Respondent,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent - Cross-Petitioner,*
PETER KIEWIT & SONS,
*Respondent - Cross-Petitioner -
Cross-Respondent.*

(WCB Nos. 80-03041, 80-01909; CA A26570)

671 P2d 715

Quintin B. Estell, Salem, argued the cause for petitioner - cross-respondent. With him on the briefs was Emmons, Kyle, Kropp & Kryger, P.C., Salem.

LaVonne Reimer, Portland, argued the cause for respondent - cross-petitioner - cross-respondent. With her on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause and filed the brief for respondent - cross-petitioner.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

This is a workers' compensation case in which an appeal was filed by claimant and cross-appeals have been filed by the carrier for the first employer and by the second employer. We reverse on claimant's appeal and affirm on both cross-appeals.

The issue that must be decided first is contained in SAIF's cross-appeal. SAIF appeals the Board's order on reconsideration, which held that an aggravation had occurred and that, therefore, SAIF was responsible for claimant's condition. All parties agree that the case is controlled by *Boise Cascade Corp. v. Starbuck,* 61 Or App 631, 638, 659 P2d 424, *rev allowed* 294 Or 792 (1983), in which this court stated:

> " ' "If the second [*i.e.,* last] injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.
>
> " ' "On the other hand, if the second [*i.e.,* last] incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributes the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a pre-existing condition." ' 27 Or App at 364-65, quoting 4 Larson, Workmen's Compensation Law 17-71 — 17-78, § 95.12 (1976).

"Although that rule imposes total liability for a disability on the employer for whom the claimant worked at the time of the last injury, that liability is not imposed (as it would be in the case of an occupational disease) because the work exposure *could* have caused the disability; it is imposed because there was a traumatic incident that contributed

independently to the claimant's disability. * * *" (Emphasis in original.)

Claimant was initially injured on September 13, 1978, when, while working as a flagman, he was hit by a mobile home and thrown across a highway and into a ditch. His claim was accepted by SAIF, and it was closed in September, 1979, with payment of temporary total disability but no award of permanent disability. He was released for work with a lifting limitation of 25 pounds and in mid-November, 1979, began work for Kiewit as a flagman. On November 20, 1979, he entered into a stipulated agreement with SAIF, under which he was paid 15 percent unscheduled disability for his low back and hip injury. Claimant continued to have back pain during the period of time when he was employed by Kiewit but was able to work full-time as a flagman. On November 27, 1979, he lifted a light standard at work and experienced increased pain in his back. On December 9, 1979, he lifted some plywood at work and again experienced increased back pain. He left work on December 14, 1979. The parties disagree whether he quit because of an argument at work or because of difficulties caused by his disability.

■ On the issue of responsibility, all parties rely on the reports and deposition of Dr. Cookson,[1] which are inconsistent and imprecise. However, if all of his reports and deposition are read together, it is apparent that the incidents in November and December of 1979, merely temporarily increased claimant's pain but did not worsen his disability. That is consistent with Dr. Cookson's testimony that, immediately after claimant quit work on December 14, he could have returned to work as a flagman with the same weight restrictions that had been placed on him before either of the incidents. The preponderance of the evidence supports the Board's determination that claimant suffered an aggravation of his 1978 injury and not a new injury. Therefore, the Board correctly concluded that SAIF is responsible for claimant's condition.

---

[1] Claimant cites in addition a report of Dr. Martens. Because this report indicates that Dr. Martens was only informed of claimant's injury in September, 1978, and does not indicate that the doctor was even aware that claimant ever worked for a second employer, his conclusion that the initial accident was a material contributing cause to claimant's present complaints is not entitled to any weight and we do not rely on it.

■ Kiewit cross-appeals, assigning as error:

"If Peter Kiewit is found to be the responsible employer, it contends that the Board erred in finding that claimant is entitled to an additional award of 35 percent unscheduled permanent partial disability."

As noted above, SAIF is the responsible carrier. SAIF did not cross-appeal on this issue or argue it in any manner in its brief. We therefore affirm the Board's holding that claimant is entitled to an additional award of 35 percent unscheduled permanent partial disability.

■ Next, we examine claimant's appeal, in which he contends that the Board erred on reconsideration in holding that he was not entitled to any temporary disability benefits and in changing the date on which he was medically stationary. SAIF answered these arguments in its brief by stating:

"Respondent State Accident Insurance Fund Corporation (SAIF) will accept claimant's statement of the case, and argument set forth in claimant's brief."

Because of SAIF"s concession on claimant's arguments, we reverse on claimant's appeal as to SAIF and hold that he is entitled to temporary total disability from December 14, 1979, until closure under ORS 656.268, as provided in the Board's original opinion.

Reversed on the appeal; affirmed on both cross-appeals.